(120 So. 623)

No. 29391.

HUSSMANN et al. v. WESTFELDT BROS.

Jan. 28, 1929.

Rehearing Denied Feb. 25, 1929.

William B. Grant and Frank Wm. Hart, both of New Orleans, for appellant.

Fred C. Marx and Lemle, Moreno & Lemle, all of New Orleans, for appellees.

OVERTON, J. The plaintiffs in this suit are the widow and children of Ernesto Gustave Hussmann, residents of Guatemala, and the defendant is a commercial firm doing business in New Orleans. The suit was brought to recover of defendant $7,583.23, represented by two items, one for the sum of $6,096.61, and the other for the sum of $1,486.66. On the first item interest was sued for at the rate of 8 per cent. per annum, but it is now admitted by plaintiffs that they are entitled to only 5 per cent. per annum interest thereon. On the second item interest is prayed for at the rate of 6 per cent. per annum from January 14, 1921.

As the second item may be quickly disposed of, we shall consider it first. That item represents the proceeds of 77 bags of coffee, shipped by Ernesto G. Hussmann to defendant to be sold by the latter for the account of Hussmann. Defendant admitted, after the suit was filed, that this item was due, and deposited in court an amount sufficient to pay the item, with 6 per cent. per annum interest thereon from judicial demand, and the costs of court, incurred. Plaintiffs refused to accept the amount deposited, and the amount was later withdrawn by agreement, the right being reserved to plaintiffs to claim interest from January 14, 1921, the date named in their petition.

Defendant sold the 77 bags of coffee and received the amount on January 14, 1921. The amount should have been forwarded to plaintiffs on that date, for it was then due. As the amount became due then, interest began to run from that date. Morris v. Cain, 39 La. Ann. 712, 1 So. 797, 2 So. 418. But, as held by the trial court, and acquiesced in by plaintiffs, the interest should be at the

rate of 5 per cent. per annum, which is the rate for legal interest, instead of 6 per cent., for 6 per cent. is conventional interest, and there was no written contract to pay conventional interest.

The first item is not connected with the second one, considered above. That item, that is, the first item, is alleged to represent the net proceeds of 285 bags of coffee, alleged to have been shipped to defendant through H. F. Towning, a broker in Guatemala City, and to have belonged at the time to Ernesto G. Hussmann, the husband of one of the plaintiffs herein, and the father of the others. The coffee was sold by defendant, and the net proceeds were credited by it on an account due it by Towning, growing out of certain sugar transactions.

It is the contention of plaintiffs that Towning was not the owner of this coffee, and therefore that defendant was without right to credit the net proceeds thereof on Towning's indebtedness to it. Towning is not asserting any claim to the proceeds of the coffee. In fact, the correspondence in the record indicates that Towning does not consider that he has any right to its proceeds or to the credit given him for them.

The business relations between defendant and Towning were the outcome of the following letter written by Towning to defendant on January 15, 1920, to wit:

"I cabled you on the 15th Inst. as follows:

"I offer you subject to being unsold 1500 quintals best white sugar. * * *

"I have recently started in business for myself as a general commission agent and knowing of sugar for sale and hearing you were in the market I took the liberty of cabling you. * * *

"Should we do business I should have to request you to please make arrangements for payment against documents at Puerto Barrios as I have no funds to finance such a business. * * *"

From the foregoing letter it is apparent that Towning notified defendant at the outset that he was only a general commission agent, and was unable to finance the transactions that defendant might have through him, and hence that arrangements would have to be made by defendant in Guatemala to finance them.

As an outcome of the foregoing letter, various transactions were had between defendant and Towning; these transactions, in the beginning, being largely, if not entirely, sugar transactions. As a result of these, Towning became indebted to plaintiff apparently in a large sum, due chiefly to a charge against him for loss on 1,600 quintals of sugar, the loss amounting to $12,800. It was against this indebtedness that defendant credited the net proceeds of the 285 sacks of coffee.

These sugar transactions have no direct bearing on the transaction, relating to the 285 sacks of coffee, here involved, except in so far as they may be explanatory of why defendant credited the net proceeds of the 285 sacks of coffee to Towning's account, for defendant's defense is that it knew only Towning in the transaction, and had a right to so credit the net proceeds of that coffee.

Coming still closer to the transaction relating to the 285 sacks of coffee, forming the basis of the second item sued upon, Towning on March 24, 1920, wrote defendant as follows:

"I am sending you by parcel post four samples of coffee, * * *

"There is offered 1500 quintals [a quintal being 100 pounds Spanish weight, 101.43 pounds English weight] of Arabigo Coffee and from 200 to 300 quintals of the Maragojype. * * * Delivery is for April and May, but the greater part will be ready in April. * * *

"The owner of the coffee is desirous of selling this coffee in station here, but I shall be

pleased to receive a quotation by cable making the best offer you can for the 1500 quintals, and an offer also for the Maragojype. I can deduct freight and insurance and make an offer in station on basis of your offer.

"There is one thing you must bear in mind if you buy this coffee, same must be paid for against railroad receipt in station, therefore it will be necessary for you to make provision for funds here. * * *"

On March 24, 1920, defendant cabled an offer to Towning for the entire quantity, shipment to be made by steamer during April. Towning replied by cable that the price offered was too low, and on April 5, 1920, wrote defendant a letter, in which, after quoting defendant's cablegram and his reply, he said:

"The price of $22 per quintal f. o. b. Barrios is lower than the market here. My clients are asking $20 in station, which equals $22.92 f. o. b. without counting brokerage or commission."

On April 27, 1920, defendant cabled Towning, offering $22.75 a quintal, and Towning replied that the offer was accepted, and on May 1, 1920, Towning cabled defendant as follows:

"Coffee—Referring to my telegram 29th please instruct your bankers cable credit for $30,000 to Clermont & Co. payable against Railway Company's receipts for coffee telegraphing to me when it is done. Contract signed for fifteen to sixteen hundred quintals, a copy of which is being sent by first post. Nearly 1000 ready to load first steamer after receipt credit. * * *"

On May 4, 1920, defendant cabled Towning that the credit arrangement had been made with Clermont & Co., and on May 6, 1920, Towning inclosed defendant a copy of the contract, entered into by him with Ernesto G. Hussmann for the coffee. The contract provides, among other things, that the price to be paid for the coffee was $19 a quintal of 100 Spanish pounds, placed at the station of Pancajche (evidently the nearest station to Hussmann's plantation); that delivery was to be made during the month of May, 1920; that payment was to be made against railroad receipts, through Clermont & Co., with sight drafts; and that shipment was to be made to defendant at New Orleans, under defendant's floating policy. The contract is worded, in the purchasing clause, as if Towning was the purchaser, notwithstanding up to that time it appears that it was Towning's intention to purchase for defendant; but, as we shall see as the case develops, that that fact will not affect the results.

The date of delivery at the station was extended, with the consent of defendant, from May to June 15, 1923, and arrangements were made accordingly by defendant, through its brokers, with Clermont & Co., for the extension of the credit, allowed it.

There was delivered by Hussmann to the station at Pancajche, under the foregoing contract, by June 15, 1920, 1,200 quintals of coffee. This coffee was paid for, and the price of it is not involved in this suit. On July 3, 1920, Towning cabled defendant to ascertain whether defendant wished him to deliver the balance. To this cable defendant replied that 1,200 quintals were sufficient, and directed Towning not to ship the balance because of the delay in delivery. In response to this, Towning immediately wrote defendant as follows:

"I anticipated this reply and telegraphed the estate [Hussmann's plantation] yesterday not to ship any more coffee pending further instructions. I have so advised the seller by telegraph that we do not require more coffee due to delay in the shipment of the amount contracted for."

On July 15, 1920, Towning cabled defendant as follows:

"Coffee—538 quintals, 359 bags, shipped per steamer Columbia 12th of July could not stop.

Telegraph immediately whether you will take it. If not hold it pending instructions. * * *"

This coffee includes the 285 bags or 427½ quintals, constituting the basis for the first item, sued upon herein, which is the item now under consideration.

After some additional correspondence had, and one or two cablegrams sent, Towning, with reference to the 359 bags of coffee, which included the 285 bags here involved, cabled defendant on August 1, 1920, as follows:

"Coffee—Can you sell on consignment? What is the price of it at present?"

On August 3, 1920, with respect to the same coffee, Towning wrote defendant as follows:

"I await your reply as to best price you can obtain for this coffee treating same as if it had been shipped you on consignment."

On August 11, 1920, Towning wrote defendant, with reference to this coffee, as follows:

"In the event of your selling Messrs. Hussmann's coffee on consignment I shall be pleased if you will reserve a small commission to be deducted from the price obtained. * * *"

On August 21, 1920, defendant sold the coffee for the account and at the risk of Towning, and credited the net proceeds to Towning's account.

■ From the foregoing statement of the case, which perhaps is more exhaustive than necessary, Ernesto G. Hussmann was the owner of the 285 sacks of coffee, when they reached New Orleans and when sold by defendant as if shipped on consignment. If it be conceded that the contract for the 1,600 quintals, signed by Towning and Hussmann, vested title to the coffee in Towning nevertheless, when defendant refused to accept any part of the coffee beyond the 1,200 quintals shipped, because of the delay in the delivery of the balance at the railroad station, Towning canceled the contract, so far as the balance was concerned. The 285 sacks therefore became again the property of Hussmann. It does not appear that Hussmann ever complained of the cancellation. In fact, he was not in position to complain, for he was in default as to the delivery of the balance. It is evident that the 285 bags, in question, were delivered by Hussmann and shipped as the result of an error. It was Hussmann who delivered the coffee to the railroad. Towning, although he attended to the matter after it was discovered that the 285 bags had been shipped, made it clear, we think, in his correspondence with defendant, that he was not claiming that coffee. In our view, the record discloses that Hussmann was the owner of the 285 sacks of coffee, and as such was the case, and as Hussmann is now dead, his widow and heirs are entitled to the net proceeds thereof.

While defendant showed, in the account rendered by it of the sale, that the net proceeds of the sale were $6,096.61, the trial court found that defendant was entitled to a further credit on that amount, which reduced it to $5,498.77, and rendered judgment on the first item, herein sued upon, for the amount, last named, with 5 per cent. interest thereon from October 31, 1920. Plaintiffs do not complain of the judgment rendered.

■ Before closing, it should be said that, with the exception of one witness—a railroad official—plaintiffs' case is made up entirely of letters and cablegrams between Towning and defendant. Plaintiffs objected to these letters and cablegrams, and more especially those written or sent by Towning, on the grounds that they constitute the statements of a third person, and are res inter alios acta and self-serving declarations. These objections, in this instance, were properly overruled. The letters and cablegrams constituted the basis of the transaction. The entire matter was

begun and ended by means of letters and cablegrams.

For the reasons assigned, the judgment appealed from is affirmed.